IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| VICTORIA YI, Next Friend of SONG MEYONG HEE, an Incapacitated adult, HEO HYEOB, HEO EUNSUK, and HEO KEUN SEOK, | ) ) ) ) ) ) | CIVIL NO. 10-00318 LEK-RLP |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| PLEASANT TRAVEL SERVICE, INC., ROYAL LAHAINA RESORT, HAWAIIAN HOTELS AND RESORTS, JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10, ROE NON-PROFIT CORPORATIONS 1-10, ROE GOVERNMENTAL ENTITIES 1-10, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

_____

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT
PLEASANT TRAVEL SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Pleasant Travel Service,

Inc., doing business as Royal Lahaina Resort and Hawaiian Hotels

& Resorts' ("Defendant"), Motion for Summary Judgment ("Motion"),

filed on May 18, 2011.  Plaintiffs Victoria Yi, Next Friend of

Song Myeong Hee, an incapacitated adult, Heo Hyeob, Heo Eunsuk,

and Heo Keun Seok (collectively "Plaintiffs") filed their

memorandum in opposition on August 26, and Defendant filed its

reply on September 2, 2011.  This matter came on for hearing on

September 16, 2011.  Appearing on behalf of Defendant was Randall

Chung, Esq., and appearing on behalf of Plaintiffs was James Krueger, Esq. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Defendant's Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below. The Motion is GRANTED as to Defendant's argument that Plaintiffs are not entitled to punitive damages, and is DENIED in all other respects.

## BACKGROUND

Plaintiffs filed a Complaint in State Circuit Court of the Second Circuit against Defendant Pleasant Travel Service, Inc., Royal Lahaina Resort, and Hawaiian Hotels & Resorts.[1] Defendant removed the action to this Court on June 3, 2010.

Plaintiffs allege that on August 8, 2009, Song Myeong Hee ("Song"[2]), along with her husband, Heo Hyeob, daughter, Heo Eunsuk, and son, Heo Keun Seok, were guests at the Royal Lahaina Resort ("hotel") operated by Defendant, located in

---

[1] On November 9, 2010, the parties entered a stipulation for dismissal with prejudice as to Royal Lahaina Resort and Hawaiian Hotels & Resorts because Royal Lahaina Resort and Hawaiian Hotels & Resorts are trade names without the capacity to be sued in themselves as defendants under Fed. R. Civ. P. 17. Pleasant Travel Service, Inc. is the only remaining Defendant. [Dkt. no. 33.]

[2] The pleadings refer to Song Myeong Hee with various names. Defendant's Motion refers to her as "Song," Plaintiffs' memorandum in opposition refers to her as "Mrs. Hee," Plaintiffs' expert report prepared by Peter Rossi, M.D., refers to her as "Mrs. Song," [Mem. in Opp., Rossi Decl., Exh. A3]. To avoid confusion, the Court will refer to her as "Song."

Kaanapali, Maui, Hawai'i. [Complaint at ¶¶ 2-5, 13.] All are
residents and citizens of Seoul, Korea. [Id. at ¶ 2.]
Plaintiffs allege that, on or about August 8, 2009, Song was in
one of the two swimming pools on the hotel property where she
"sank below the surface of water in the pool for a period of time
after which she was brought to the surface having suffered a
hypoxic event which cased her to suffer brain damage which
rendered her, in the parlance, a 'vegetable.'" [Id. at ¶ 14.]

Plaintiffs allege that there was no lifeguard on duty
at the pool at the time of the accident; instead, there was a
sign posted near the pool that said "WARNING NO LIFEGUARD ON
DUTY". [Id. at ¶¶ 12, 17.] According to Plaintiffs, the "text
of the aforesaid sign failed to adequately warn guests of
defendants, and/or any of them, including plaintiffs, of the
hazard, risk and foreseeable harm as could result from the
failure of defendants, and/or any of them, to provide a lifeguard
at the pool." [Id.] Plaintiffs claim that, if Defendant had
provided a lifeguard at the pool on August 8, 2009, Song likely
would not have suffered brain damage. [Id. at ¶ 19.]

Plaintiffs allege that Defendant was negligent, and
seek the following: (1) damages for Song's severe brain damage,
limitation of activity, loss of enjoyment of life, reduction of
life expectancy, and past and future medical treatment;
(2) damages for loss of marital and parental support, love,

3

consortium and friendship, and for serious mental distress on
behalf of Song's husband, daughter, and son; and (3) punitive
damages. [Id. at ¶¶ 21, 25, 27-29.]

## I.   **Defendant's Motion**

Defendant seeks summary judgment on all claims on the
grounds that there are no genuine issues of material fact and it
was not negligent as a matter of law. Defendant argues that
Plaintiffs cannot prove the essential elements of their
negligence case by establishing a duty owed by it to Song with
respect to the accident. [Mem. in Supp. of Motion at 2.]
Defendant asserts that whether it owed a duty to Plaintiffs is a
question of law that can be determined on summary judgment. [Id.
at 8 (citing Ruf v. Honolulu Police Dep't, 89 Hawai'i 315, 972
P.2d 1081 (1999)).]

### A.   **No Duty to Plaintiffs**

Defendant first argues that it owed no duty to
Plaintiffs because any danger presented by the swimming pool was
known, open, and obvious. Defendant asserts that, under Hawai'i
law, it is not under a general duty to warn of known or obvious
dangers which are not extreme, and which a reasonable person,
exercising ordinary attention, perception and intelligence, can
be expected to avoid, absent circumstances which excuse oversight
of the danger or prevent its avoidance. [Id. at 9.] Defendant
then discusses Wagatsuma v. Patch, 10 Hawai'i App. 547, 569, 879

4

P.2d 572, 595 (1994), which addressed whether the defendant owed a duty to plaintiff to warn of the dangers inherent in an above-ground swimming pool. Defendant claims that Wagatsuma recognized, under strict product liability principals, that the obviousness of the danger of an above-ground swimming pool to young children made it unreasonable to require the manufacturer to furnish labels with its pools warning of that danger, for purposes of a failure to warn claim; rather, a product manufacturer's duty to warn only extends to known dangers that users would not ordinarily discover. [Id. at 11.]

Defendant maintains that the danger of drowning in a swimming pool, or other body of water, is an open and obvious danger, at least to adult guests. Irrespective of any language barrier and the absence of a lifeguard, Defendant argues that any dangers with regard to the swimming pool were open and obvious, and, therefore, there was no duty to warn of such dangers. [Id. at 12.]

Next, Defendant asserts that it did not have any duty to provide lifeguards at the swimming pool. There are no statutes, rules, or other regulations requiring private hotels in the state to post a lifeguard at swimming pools, nor is there a legal duty for a hotel to provide lifeguards for its pools. Defendant cites Carreira v. Territory, 40 Haw. 513 (1954), for its holding that the Territory of Hawai'i, as operator of the

public saltwater swimming pool at the Natatorium was not the
insurer of swimmers using the pool, and was not negligent with
regard to the drowning of a twelve-year-old boy.  In that case,
the Territory provided a lifeguard, but he was off-duty eating
lunch at the time of the drowning.  Defendant claims the case
demonstrates that there is no presumption of negligence based
solely on the lack of a lifeguard.  [Id. at 14-15.]  Defendant
also relies upon Kaczmarczyk v. City & County of Honolulu, 65
Haw. 612, 656 P.2d 89 (1982), which held that a municipality that
voluntarily assumes the provision of lifeguard services has a
duty to perform such services with reasonable care.  [Id. at 16.]
According to Defendant, Carreira and Kaczmarczyk are factually
distinguishable from the instant case because those defendants
were governmental entities with public swimming areas, and, in
both, the defendants voluntarily undertook to provide lifeguards
at the Natatorium and public beach park.  Here, Defendant did not
assume any duty to provide qualified lifeguards.  [Id. at 17.]

        Defendant claims that other jurisdictions have
generally held that, in the absence of a statute, regulation, or
ordinance requiring private hotel owners to post a lifeguard at a
private pool, a private hotel owner does not owe guests a duty to
post a lifeguard at a private hotel swimming pool.  [Id. (citing
Frost v. Newport Motel, Inc., 516 So.2d 16 (Fla. Dist. Ct. App.
(1987)); Baker v. Eckelkamp, 760 S.W.2d 178 (Mo. Ct. App.

6

1998)).] Another court held that, even where a regulation required a "qualified attendant" to be present at the swimming pool, there was no duty on the part of the swimming pool owner to provide a lifeguard. [Id. (citing Hemispheres Condominium Ass'n, Inc. v. Corbin, 357 So.2d 1074 (Fla. Dist. Ct. App. 3d 1978)).] Defendant claims that neither the state nor the County of Maui requires lifeguards at private hotel swimming pools, and, therefore, Defendant owed no duty to Plaintiffs to provide lifeguards at the pool where Song nearly drowned. [Id. at 18.]

Defendant also argues that it was not obligated to warn of the absence of lifeguards in a foreign language. According to Defendant, there is no legal requirement that a premises owner provide warning signs in a foreign language for the benefit of foreign tourists. Defendant relies on In Re Hyun Bok Chung, 43 B.R. 368 (Bankr. D. Hawai'i 1984), which rejected debtors' argument that they were not bound by a security agreement they signed because they could not understand English. In Re Hyun Bok Chung found that the debtors had the opportunity to have the security agreement read and explained by their daughter, who was fluent in English, and that their failure to do so was negligence on their part. Here, Defendant claims that Song's daughter, Eunsuk ("Ally"), understood, spoke, and taught English, and could have instructed her regarding the meaning of the "NO LIFEGUARD ON DUTY" sign. Even if Song, who did receive basic English language

training from 1998 to 2001, could not understand the English writing on the sign, the sign still provided adequate warning that there was no lifeguard on duty.  The sign included the universal symbol for "NO LIFEGUARD ON DUTY," a pictograph of a person standing with arms to the side, hands resting on hips, with a circle and strike-through surrounding the person. Defendant asserts that there is no allegation that Song suffered from any incapacity that would have prevented her from realizing that there was no lifeguard on duty, or that she was led to believe that there was a lifeguard on duty.  [Id. at 19-21.]

     **B.**  **No Punitive Damages**

       Defendant seeks summary judgment on Plaintiffs' punitive damages claim on the grounds that the claim was not properly plead and there is no basis to support such a claim against Defendant here.

       First, Defendant asserts that the Complaint does not allege specific conduct that is willful, wanton, or reckless. Defendant argues that the Complaint does not give fair notice of any claim for punitive damages, and does not put Defendant on notice of the conduct which is the basis for punitive damages. Rather, the allegations, if true, amount to negligence. Defendant claims that under Ross v. Stouffer Hotel, Co., 76 Hawaiʻi 454, 879 P.2d 1037 (1994), Plaintiffs cannot maintain a claim for punitive damages where the Complaint does not include

allegations of a tort that would justify punitives.  [Id. at 21-23.]

Next, Defendant claims that, viewing the facts of the case in the light most favorable to Plaintiffs, the alleged negligence does not support a claim for punitive damages.  The purpose of punitive damages is to punish or deter, and they require deliberate, outrageous conduct on the part of a defendant.  [Id. at 23 (citing Masaki v. General Motors, Corp. 71 Haw. 1, 780 P.2d 556 (1989)).]  Defendant also argues that Plaintiffs cannot prove that they are entitled to punitive damages by the requisite clear and convincing evidence standard. [Id. at 27-28.]

In sum, Defendant argues that the allegations of the Complaint that Defendant did not adequately warn that there was no lifeguard on duty, and did not provide a lifeguard, constitute at worst mere inadvertence, mistake, or an error of judgment. There is no direct evidence of the culpable state of mind required by Masaki, and Plaintiffs' claim for punitive damages is insufficient as a matter of law.  [Id. at 29.]

## II.  **Plaintiffs' Memorandum in Opposition**

In their memorandum in opposition, Plaintiffs assert that Song nearly died in Defendant's pool, and it "might have been better had she inasmuch as she has been diagnosed as suffering from 'PVS', persistent vegetative state," and remains

9

comatose and unresponsive in a Seoul hospital.  [Mem. in Opp. at 1.]  In order to suffer brain damage due to hypoxia, Song would have to have been under water for five to ten minutes.  [Id., Exh. B, 7/11/11 Report of Jerome Modell, M.D.]  Plaintiffs assert that, had there been a lifeguard at the pool, Song would not have remained under water for such a long period of time, and would not have been rendered permanently comatose.  [Id., Declaration of Shawn DeRosa ("DeRosa Decl."), at ¶ 31.[3]]

Plaintiffs argue that Defendant did owe Song a legal duty that it violated by exposing her to an unreasonable risk of harm, which could have easily been avoided by providing a lifeguard at the pool.  "The unwarned about, unreasonable risk of harm, to which defendant exposed its pool-using guests, including [Song], absent anything else . . . , was apparently the unobservable possibility of not being rescued should the need for such arise."  [Id. at 2.]  Plaintiffs assert that the sign posted near the pool warning that there was no lifeguard on duty had no legal efficacy as a warning, but that the sign demonstrates Defendant's knowledge that its guests were foreseeably exposed to serious harm at its pool, but did nothing to preclude such incidents, and that such conscious disregard of guest safety is a basis for jury consideration of punitive damages.  [Id.]

---

[3] The DeRosa Declaration is attached to Plaintiff's memorandum in opposition as Exhibit D.

## A.  **Factual Issues**

Plaintiffs attach the depositions of two of Defendant's employees: Rhapsody Lunes[4] and Kleyn Villa.[5]  Lunes was the hotel's security manager in August 2009.  He explained that the beachfront hotel's main building had nine stories, with additional two-story cottages, with six rooms each.  One of the two pools fronted the main building's outdoor restaurant.  About fifty feet away was the second pool where the incident occurred, known as the Barefoot Bar pool, which was about eight feet deep.  Both pools are rectangular, and in August 2009, neither pool had a lifeguard.  The Barefoot Bar pool had steps and handles at one end to enter the pool.  [Id. at 3-4 (citing 6/10/11 Lunes Deposition, at 14-35, 44-42).]

In contrast to the "NO LIFEGUARD ON DUTY" sign posted at the Barefoot Bar pool, Defendant maintained another sign on the pool deck at the entrance to a path leading to the beach.  This beach path sign specified five different ocean hazards, and Plaintiffs contend that this was a proper warning signed compared to the "NO LIFEGUARD ON DUTY" sign.  [Id. at 4 (citing 6/10/11 Lunes Deposition, at 45, 61).]

---

[4] The entire Lunes Deposition is attached to the memorandum in opposition as Exhibit M.

[5] The entire Villa Deposition is attached to the memorandum in opposition as Exhibit N.

**B.    Duty of Landowners in Hawai'i**

Plaintiffs assert that an occupier of land has a duty to use reasonable care for the safety of all persons reasonably anticipated to be upon the premises, regardless of the legal status of the individual.  [Id. at 4 (citing Pickard v. City & Cnty. of Honolulu, 51 Haw. 134, 135, 452 P.2d 445, 446 (1969)).] Further, a landowner will be liable for the injuries sustained by a person whose presence on the property was anticipated if there is a condition upon the land posing an unreasonable risk of harm, of which the possessor knows or should have known, and about which the possessor fails to take reasonable steps to eliminate or adequately warn against.  [Id. (citing Corbet v. Ass'n of Apt. Owners of Wailua Bayview Apts., 70 Haw. 415, 772 P.2d 693 (1989); Gump v. Walmart Stores, Inc., 93 Haw. 428, 440, 5 P.3d 418, 430 (Ct. App. 1999)).]

Plaintiffs argue that summary judgment is not the appropriate vehicle to decide this matter because when an unreasonably dangerous condition is obvious, whether the risk of a dangerous condition should have been objectively known to a plaintiff, as an ordinarily intelligent person, is a factual determination.  [Id. at 5 (citing Kaczmarczyk v. City & Cnty. of Honolulu, 65 Haw. 612, 616, 656 P.2d 89, 92 (1982)).]

With respect to hotels, Plaintiffs argue they have a duty to their guests to take reasonable action to protect guests

against unreasonable risk of harm, and that hotels have a
"special relationship" with their guests.  [Id. at 6 (citing
Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376 (1987)).]
Plaintiffs argue that the strip of hotels on the Kaanapali coast
where the Royal Lahaina Resort is located is a unique
geographical community of resort facilities.  According to
Plaintiffs, Las Vegas has a similar "strip" of quality resort
hotels catering to tourists from around the world.  Plaintiffs
offer the report of Las Vegas private detective Hal de Becker,
III, who indicates that most hotels are on Las Vegas Boulevard,
similar to how the Kaanapali hotels run parallel to the ocean.[6]
Each of the hotels visited by Mr. de Becker had a lifeguard on
duty during the pools' open hours.  [Id. at 7 (citing 7/12/11
Investigative Report of Hal de Becker, III, at 2).]  Plaintiffs
also submit photographs taken at two Honolulu hotels, the Hilton
Hawaiian Village and Hale Koa, and a Reno, Nevada resort hotel,
indicating that each of these hotels had lifeguards on duty at
the time the photographs were taken.  [Id. at 7; Declaration of
Steven Lane, Exh. H (Honolulu hotel photographs); Declaration of
Peter Cahill, Exh. V (Reno, Nevada hotel photographs).]

        Plaintiffs also distinguish the authorities relied upon
by Defendant as factually inapplicable, because they involved

_____

        [6] The Investigative Report of Hal de Becker is attached to
the memorandum in opposition as Exhibit G.

either private home backyard pools, trespassers, minors
disregarding parents' instructions, or states having regulations
pertaining to lifeguards, which Hawai'i does not. According to
Plaintiffs, none of the cases cited by Defendant involves resort
hotels, or a defendant in a special relationship with a guest,
and, therefore, as matter of law, summary judgment cannot be
granted. [Id. at 8-9.]

**C.    Discussion of Lifeguards**

Plaintiffs claim that in Tarshis v. Lahaina Investment
Corp., 480 F.2d 1019 (9th Cir. 1973), the Ninth Circuit held that
a hotel had a duty to advise its guests of potentially dangerous
ocean surge conditions offshore of its property, but the case did
not mention the defense of "open and obvious condition."
Plaintiffs also cite Haw. Rev. Stat. § 486K-5.5, relating to a
hotelkeeper's limited liability for certain beach and oceangoing
activities, and § 486K-5.5, regarding a hotelkeeper's limited
liability for provision of certain recreational equipment, as not
including language regarding open or obvious conditions. [Id. at
9.]

Plaintiffs argue that sound policy considerations
justify the existence of a duty of a hotel to its patrons to
provide lifeguards at pools to protect them from potential
unreasonable risk of harm of serious injury due to the absence of
opportunity for rescue. This sound policy is corroborated by the

14

protection from aquatic harm provided to the public by lifeguards at the municipal pool across the highway from the Royal Lahaina Resort at the Lahaina Aquatic Center County Pool. Plaintiffs argue that, whether aquatic harm is generated by the ocean or by a hotel pool, no basis exists for denying a hotel pool user the same protection afforded against serious injury or death from the ocean. [Id. at 10.]

**D. <u>Causation</u>**

Plaintiff asserts that a trained lifeguard, exercising due diligence, under either the Red Cross twenty second rule, or the YMCA ten second rule, would have seen Song and brought her to the surface before she would have suffered permanent brain damage. [Id. at 11 (citing DeRosa Decl., at ¶¶ 25-31).] According to Plaintiffs, the failure of the hotel to provide a lifeguard at the pool was a legal cause of Song's persistent vegetative state. [Id. at 12.]

**E. <u>Existing Sign Was Inadequate</u>**

Plaintiffs next argue that the "NO LIFEGUARD ON DUTY" sign at the hotel end of the pool was not a "warning," but merely a notice of the absence of a lifeguard. Plaintiffs' expert Shawn DeRosa opined that the sign was located in a position where persons entering the pool at the only designated entry and exit steps, at the pool end opposite the Barefoot Bar, would not likely have seen the sign. Moreover, the sign text was

15

inadequate to constitute a warning insofar as it did not signify the level of seriousness of the danger, the description of the danger, the risk of harm or consequences thereof, or any avoidance instructions. [Id. at 13 (citing DeRosa Decl., at ¶¶ 33-34).]

Plaintiffs contend that, where serious injury can occur, the preferred resolution is to fix the hazard, rather than merely warn against it. [Id. at 13.] If Defendant knew its pool was an open and obvious hazard, "its failure to warn what it was, was inappropriate in the absence of proof it could not control the hazard . . . by hiring a lifeguard, a far cheaper expedient than the risk it ran by not doing so, and the probable millions of dollars payment of plaintiffs' claim will likely engender." [Id. at 14.]

Plaintiffs also argue that the sign cannot serve as a shield to liability because there is no evidence that Song saw the sign, or that it was located in a place where it would be expected that guests entering the Barefoot Bar pool would see it. Plaintiffs maintain that signs should be located in three positions so they can be seen prior to entering the water: at the entrance, in the locker rooms, or at poolside. [Id. at 14-15 (citing Exh. T (Aquatics International, Vol. 23, No. 6, at 23 (June 2011)).]

**F.  Open and Obvious Condition Does Not Apply**

Plaintiffs argue that Defendant's reliance on an open and obvious condition defense does not bar liability here, because the concept has nothing to do with legal duty.  [Id. at 15-16.]  Plaintiffs cite Robbin v. Marriott Hotel Services, Inc., in which Judge Kurren ruled, "as a matter of law, that stepping onto the infinity ledge to enter the pool is a known and obvious danger."  CV. No. 08-00061 BMK, 2010 WL 3260185, at *4 (D. Hawai'i Aug. 18, 2010).  The judge denied summary judgment, finding that a landowner may be liable for the physical harm caused to his invitee by a known and obvious danger if the landowner should anticipate the harm, and concluded that a genuine issue of material fact existed as to whether the defendant should have anticipated the harm to the plaintiff, adequately warned the plaintiff, or took other reasonable steps to protect her against the known and obvious danger.  [Id.] Plaintiffs argue that this holding supports their position that the duty of a defendant is not abrogated by the existence of an alleged open and obvious condition, but relates to comparative fault.  [Mem. in Opp. at 17.]

Plaintiffs further argue that whether a hazard is an open and obvious danger is a jury question, and that breach of duty is a factual issue usually decided by the jury, so summary judgment is not appropriate here.  [Id. at 17-18.]

### G. **Punitive Damages**

Plaintiffs argue that they properly pled their claim for punitive damages, and that Defendant should have conducted discovery to better understand the factual bases underlying the claim.  Further, because punitive damages are justified based upon a defendant's conduct, the issue should go to the jury to determine issues relating to conduct.  [<u>Id.</u> at 23.]  "Proof justifying factfinder review of conduct justifying punitive damages results from defendant's knowing removal of its guests' opportunity for rescue in its pools. . . .  It consciously disregarded plaintiff's (sic) rights to be rescued knowing that, by failing to provide guards, death or harm could be suffered by its guests."  [<u>Id.</u> at 24.]

## III. **Defendant's Reply**

Defendant maintains that the only issue before the Court is whether it had a duty to provide a lifeguard at the subject pool; Plaintiffs' discussion of injuries, causation, and damages are not relevant to the instant Motion.  [<u>Id.</u>]

### A. **Duty**

To the extent Plaintiffs argue that the issue of whether a danger is open and obvious is an issue for the finder of fact, Defendant distinguishes <u>Kaczmarczyk v. City & County</u>, 65 Haw. 612, 616, 656 P.2d 89, 92 (1982), and <u>Tarshis v. Lahaina Investment Corp.</u>, 480 F.2d 1019 (9th Cir. 1973), as cases dealing

18

with conditions of the ocean, and whether dangerous ocean
conditions are "open and obvious" to a person of ordinary
intelligence. Defendant maintains that Wagatsuma v. Patch, 10
Haw. App. 547, 569, 879 P.2d 572, 585 (1994), is more on point.
In that case, the Hawai'i Intermediate Court of Appeals noted
that the question of duty is entirely a question of law, and went
on to hold that the obviousness of the danger of an above-ground
swimming pool to young children obviated any duty on the part of
a pool manufacturer to furnish warnings along with their swimming
pools. [Id. at 5.]

        Defendant argues that Hawai'i appellate courts have
implicitly rejected Plaintiffs' argument that whether any risk
posed by a condition on the premises is open and obvious is
irrelevant to whether the premises owner has a legal duty.
Rather, they articulate and apply, in premises liability actions,
the known or obvious doctrine after the enactment of the
comparative negligence statute in 1969. [Id. at 5-6 (citing
Harris v. State, 1 Haw. App. 554, 557, 623 P.2d 446, 448 (1981)
(the duty of an occupier of premises does not require the
elimination of known or obvious hazards which are not extreme and
which a person would reasonably be expected to avoid); Kole v.
AMP AC, Inc., 69 Haw. 530, 532, 750 P.2d 929,930 (1988) (occupier
of land has duty to warn persons coming on to land of known
dangers not known by, nor obvious to, such persons)).] Further,

Defendant claims the comparative negligence statute only comes into play if a defendant has been found to have been negligent, and that it cannot be found to have been negligent when it was under no duty toward Plaintiffs.  [Id. at 6.]

Defendant notes that Plaintiffs discuss Knodle v. Waikiki Gateway Hotel, Inc. in the context of the Restatement (Second) of Torts § 314A (1965) "special relationship" between a hotel and its guests.  Defendant argues that in Knodle, the court stated that such a special relationship gives rise to a duty on the part of the hotel to protect guests from unreasonable risks arising out of a condition on the land.  Plaintiffs have cited no Hawai'i cases finding that a hotel swimming pool, without lifeguards posted, constitutes an "unreasonable risk."  Further, Plaintiffs' discussion regarding the Lahaina Aquatic Center County Pool, a municipal pool, having lifeguards, is inapplicable to the instant Motion.  Defendant claims that Plaintiffs have cited no Hawai'i legal authority requiring it to post lifeguards at its swimming pool.  [Id. at 7.]

Defendant next argues that Plaintiffs have not come forward with any evidence to show that there was an "unobservable possibility" of not being rescued from the swimming pool.  The subject pool is not a large swimming pool.  Further, there are signs at the swimming pool advising guests that there is no lifeguard on duty.  A quick survey of the pool, even aside from

the "NO LIFEGUARD ON DUTY" sign, confirms what is apparent to any visitor to the swimming pool – that there were no lifeguards present. [Id. at 11.]

Defendant also counters Plaintiffs' arguments regarding policy considerations as a reason for requiring hotels to provide lifeguards at swimming pools. It claims that seeking to bootstrap court decisions requiring hotels to protect guests from ocean conditions is not relevant to the instant Motion. The reasons for court decisions imposing a duty of care upon hotels regarding guests' use of the ocean do not apply to swimming pools. [Id.]

It also criticizes Plaintiffs' use of photographs of hotel pools in Nevada. The exhibits regarding swimming pools in other jurisdictions are not only irrelevant to the consideration of whether this Defendant had a legal duty under Hawai'i law to post lifeguards, but are also inadmissible. Plaintiffs do not cite any Hawai'i authority that requires hotels in the State of Hawai'i to post lifeguards, and, instead, argue that, because swimming pools in other jurisdictions have lifeguards, so too should Hawai'i hotels. [Id. at 12.]

**B.** **Foreseeability Is Not Relevant**

Next, Defendant argues that the mere foreseeability of an injury does not create a duty to prevent such an injury, and the mere possibility of injury is likewise insufficient to create

a duty on behalf of Defendant.  According to Defendant,
Plaintiffs assert that the possibility of drowning in a swimming
pool is a foreseeable occurrence, and that, by providing a "NO
LIFEGUARD ON DUTY" sign, Defendant had knowledge that its guests
could foreseeably be exposed to serious harm at its pool, and
that, because it is foreseeable that a guest could drown in a
swimming pool, hotels should be required to post lifeguards.
Again, Defendant contends that Plaintiffs have cited no authority
for the proposition that it was under a duty to post a lifeguard
at its swimming pools.  [Id. at 12-13.]

  **C.** **Discussion of Sign**

   Defendant argues it was not under a duty to warn Song
of the danger of drowning as part of its warning that there was
no lifeguard on duty because such information has been found to
be known by people encountering a swimming pool.  It argues that
the requirements for a warning sign espoused by Plaintiffs (i.e.,
1. description of danger; 2. description of risk of harm
generated by it; and 3. description of how to avoid it) were not
required here.  Further, neither Defendant, nor any swimming pool
owner, can "fix" the danger of drowning in a body of water.  [Id.
at 13-14.]

  **D.** **Punitive Damages**

   Defendant claims it is entitled to summary judgment on
punitive damages because Plaintiffs have not alleged or come

forward with evidence of "willful, wanton, malicious or intentional conduct" on behalf of Defendant toward Song, as required to maintain a claim for punitive damages. [Id. at 16 (citing Dairy Road Partners v. Island Insurance Co., 92 Hawai‘i 398, 992 P.2d 93 (2000); Masaki v. General Motors Corp., 71 Hawai‘i 1, 780 P.2d 566 (1989)).] Defendant argues that, if conduct or omission with respect to the subject incident is worthy of the imposition of punitive damages because there was no lifeguard provided here, the vast majority of hotels in the State of Hawai‘i, who do not employ lifeguards, have also acted in a manner so as to subject them to punitive damages. [Id. at 15.]

## STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

> Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See Celotex [Corp. v. Catrett], 477 U.S. [317,] 323 [(1986)]. A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). "A fact is material if it

23

could affect the outcome of the suit under the governing substantive law." <u>Miller [v. Glenn Miller Prods., Inc.]</u>, 454 F.3d [975,] 987 [(9th Cir. 2006)].

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. <u>Nissan Fire</u>, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." <u>Miller</u>, 454 F.3d at 987.  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>California v. Campbell</u>, 319 F.3d 1161, 1166 (9th Cir. 2003); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." <u>Miller</u>, 454 F.3d at 988 (quotations and brackets omitted).

<u>Rodriguez v. Gen. Dynamics Armament & Technical Prods., Inc.</u>, 696 F. Supp. 2d 1163, 1176 (D. Hawai`i 2010) (some citations omitted).

## DISCUSSION

### I. <u>Liability</u>

As part of their negligence claim, Plaintiffs must establish:

> 1.  A duty or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks;
>
> 2.  A failure on the defendant's part to conform to the standard required: a breach of the duty;
>
> 3.  A reasonably close causal connection between the conduct and the resulting injury and;
>
> 4.  Actual loss or damage resulting to the interests of another.

<u>Tseu ex rel. Hobbs v. Jeyte</u>, 88 Hawai'i 85, 91, 962 P.2d 344, 350 (1998) (citations and brackets omitted); <u>Kaho'ohanohano v. Dep't of Human Servs.</u>, 117 Hawai'i 262, 285, 178 P.3d 538, 561 (2008) (citing <u>Tseu</u>).  Defendant seeks summary judgment on the grounds that it owned no duty to Plaintiffs here.

The Hawai'i Supreme Court has explained the duty element of a negligence claim as follows:

> "[I]t is fundamental that a negligence action lies only where there is a duty owed by the defendant to the plaintiff." <u>Bidar v. Amfac, Inc.</u>, 66 Haw. 547, 551-52, 669 P.2d 154, 159 (1983) (citations omitted).
>
> The existence of a duty owed by the defendant to the plaintiff, that is, whether . . . such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of

25

the other-or, more simply, whether the
interest of the plaintiff which has suffered
invasion was entitled legal protection at the
hands of the defendant, is entirely a
question of law.

Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw.
376, 385, 742 P.2d 377, 383 (1987) (internal
quotation marks and citations omitted) (ellipsis
in original).  Regarding the imposition of a duty
of care, this court has stated that, generally,

> [i]n considering whether to impose a
> duty of reasonable care on a defendant, we
> recognize that duty is not sacrosanct in
> itself, but only an expression of the sum
> total of those considerations of policy which
> lead the law to say that the particular
> plaintiff is entitled to protection.  Legal
> duties are not discoverable facts of nature,
> but merely conclusory expressions that, in
> cases of a particular type, liability should
> be imposed for damage done.  In determining
> whether or not a duty is owed, we must weigh
> the considerations of policy which favor the
> [plaintiff's] recovery against those which
> favor limiting the [defendant's] liability.
> The question of whether one owes a duty to
> another must be decided on a case-by-case
> basis.

Blair [v. Ing], 95 Hawai'i [247,] at 259-260, 21
P.3d [452,] 464-65 [(2001)] (citations omitted)
(format altered).  In addition to the
aforementioned principles, this court has also
regarded several factors in determining whether to
impose a duty:

> [W]hether a special relationship exists,
> the foreseeability of harm to the injured
> party, the degree of certainty that the
> injured party suffered injury, the closeness
> of the connection between the defendants'
> conduct and the injury suffered, the moral
> blame attached to the defendants, the policy
> of preventing harm, the extent of the burden
> to the defendants and consequences to the
> community of imposing a duty to exercise care

26

with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

Id. at 260, 21 P.3d at 465 (ellipsis and citation omitted) (format altered).

Regardless of the source of a particular duty, [however,] a defendant's liability for failing to adhere to the requisite standard of care is limited by the pr[o]position that **the defendant's obligation to refrain from particular conduct** [or, as the circumstances may warrant, to take whatever affirmative steps are reasonable to protect another] **is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct [or omission] unreasonably dangerous.** Thus, if it is not reasonably foreseeable that the particular plaintiff will be injured if the expected harm in fact occurs, the defendant does not owe that plaintiff a duty reasonably to prevent the expected harm.

Doe Parents No. 1 v. State Dep't of Educ., 100 Hawai'i 34, 72, 58 P.3d 545, 583 (2002) (internal quotation marks and citations omitted) (first set of brackets and bold emphases added); see also Janssen v. Am. Hawai'i Cruises, Inc., 69 Haw. 31, 34, 731 P.2d 163, 166 (1987) (stating that "a defendant owes a duty of care only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous") (internal quotation marks and citations omitted); Hulsman v. Hemmeter Dev. Corp., 65 Haw. 58, 68, 647 P.2d 713, 720 (1982) (same).

The test of foreseeability "is whether there is some probability of harm sufficiently serious that a reasonable and prudent person would take precautions to avoid it." Knodle, 69 Haw. at 388, 742 P.2d at 385 (internal quotation marks, brackets, and citations omitted). "It does not

mean foreseeability of any harm whatsoever, and it is not sufficient that injury is merely possible." <u>Henderson v. Prof'l Coatings Corp.</u>, 72 Haw. 387, 396, 819 P.2d 84, 90 (1991) (quoting 65 C.J.S. Negligence § 5(5) (1966)) (internal quotation marks omitted); <u>see also</u> <u>Lee v. Corregedore</u>, 83 Hawai'i 154, 167, 925 P.2d 324, 337 (1996) ("[T]here are clear judicial days on which a court can foresee forever and thus determine liability but none on which that foresight alone provides a socially and judicially acceptable limit on recovery of damages for that injury." (Internal quotation marks and citation omitted.)).

"[T]he concept of 'duty[,]' [however,] involves more than mere foreseeability of harm." <u>Taylor-Rice v. State</u>, 91 Hawai'i 60, 71-72, 979 P.2d 1086, 1097-98 (1999).

> [A] court's task-in determining "duty"-is not to decide [merely] whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.

> <u>Id.</u> at 72, 979 P.2d at 1098 (citing <u>Thing v. La Chusa</u>, 48 Cal.3d 644, 257 Cal. Rptr. 865, 771 P.2d 814, 819 n.3. (1989)) (internal quotation marks and citation omitted).

<u>Pulawa v. GTE Hawaiian Tel</u>, 112 Hawai'i 3, 11-13, 143 P.3d 1205, 1213-15 (2006) (alterations and emphasis in <u>Pulawa</u>).

The existence of a duty is entirely a question of law. A court considers several factors in determining whether to impose a duty:

> whether a special relationship exists, the foreseeability of harm to the injured party, the degree of certainty that the injured party suffered injury, the closeness of the connection between the defendants' conduct

and the injury suffered, the moral blame
attached to the defendants, the policy of
preventing harm, the extent of the burden to
the defendants and consequences to the
community of imposing a duty to exercise care
with resulting liability for breach, and the
availability, cost, and prevalence of
insurance for the risk involved.

Blair v. Ing, 95 Hawai'i 247, 260, 21 P.3d 452,
465 (2001) (citation and periods omitted).

Hawaii Motorsports Inv., Inc. v. Clayton Group Servs., Inc., CIV.

No. 09-00304 SOM/BMK, 2010 WL 3398553, at *5 (D. Hawai'i Aug. 27,

2010) (some citations omitted).

It is well-established that Defendant, as landowner,

owes Plaintiffs a general duty of reasonable care.  Under Hawai'i

law, a landowner has a duty to use reasonable care for the safety

of all persons reasonably anticipated to be on the premises.

Kahan v. United States, 73 F. Supp. 2d 1172, 1178 (D. Hawai'i

1999) (citing Gibo v. City & Cnty. of Honolulu, 51 Haw. 299, 301,

459 P.2d 198 (1969)).  Further, Hawai'i courts recognize that a

hotel has a "special relationship" with its guests, adopting §

314A of the Restatement (Second) of Torts.  See, e.g., Knodle v.

Waikiki Gateway Hotel, Inc., 69 Haw. 376, 386, 742 P.2d 377, 384

(1987) ("When the relation is a special one of innkeeper and

guest, the former is under a duty to take reasonable action to

protect the latter against unreasonable risk of physical harm."

(citing Restatement (Second) of Torts § 314A (1965))).

Here, the parties dispute whether the hazard of not

having a lifeguard present is an open and obvious danger, and
whether that issue affects the determination of a duty or relates
to comparative fault. Defendant argues that it had no duty to
Plaintiffs because any danger presented by the swimming pool was
known, open, and obvious. Plaintiffs argue that whether the
danger was open and obvious is considered with respect to
comparative fault principals, and the issue is not relevant to
whether Defendant owed it a particular duty.

Hawai'i courts have looked to the Restatement (Second)
of Torts § 343A with regard to the duty of care landowners owe to
invitees with respect to known and obvious dangers. See, e.g.,
Friedrich v. Dep't of Transp., 60 Haw. 32, 36-37, 586 P.2d 1037,
1040 (1978).[7] It states, in pertinent part, "[a] possessor of
land is not liable to his invitees for physical harm caused to
them by any activity or condition on the land whose danger is
known or obvious to them, unless the possessor should anticipate

---

[7] In Friedrich, the Hawai'i Supreme Court held that a
property owner does not have a duty to eliminate or provide a
warning about a known or obvious hazard which a claimant would
reasonably be expected to avoid. In that case, a pedestrian
suffered serious injuries as a result of slipping and falling off
a state-owned pier. Friedrich v. Dep't of Transp., 60 Haw. 32,
34, 586 P.2d 1037, 1039 (1978). Friedrich has been superseded in
part by statute in circumstances where "the State or a County
operates a public beach park and there are extremely dangerous
ocean condition adjacent to the public beach park. See Bhakta v.
County of Maui, 109 Hawai'i 198, 215, 124 P.3d 943, 960 (2005);
Hawaii Revised Statutes § 663-1.56 (2009 Supp.). Otherwise,
however, Friedrich remains good law." Crivello v. Cnty. of
Hawai'i, No. 29502, 2011 WL 39082, at *7 (Hawai'i Ct. App. Jan.
6, 2011).

the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A(1).

In <u>Robbins v. Marriott Hotel Services, Inc.</u>, CV. No. 08-00061 BMK, 2010 WL 3260185 (D. Hawai'i Aug. 18, 2010), this district court considered the applicability of § 343A to a defendant hotel owner's argument that it did not owe its guest a duty to warn of known and obvious dangers, where the guest stepped onto an infinity ledge in order to enter a swimming pool. The court explained the duty set forth in § 343A as follows:

> Thus, "[r]easonable care on the part of the possessor . . . does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to [her] that [she] may be expected to discover them." <u>Id.</u> § 343A cmt. e. The term "obvious" means that "both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment." <u>Id.</u> § 343A cmt. b.

2010 WL 3260185, at *3. The <u>Robbins</u> court concluded "as a matter of law, that stepping onto the infinity ledge to enter the pool is a known and obvious danger." <u>Id.</u> at *4. Nevertheless, the court noted that,

> a landowner may be liable for the physical harm caused to his invitee by a known and obvious danger if the landowner should anticipate the harm. Restatement (Second) of Torts § 343A(1). Harm may be anticipated where the landowner "has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable [person] in [her] position the advantages of doing so would outweigh the apparent risk." <u>Id.</u> § 343A cmt. f. In such a case, "the

> fact that the danger is known, or is obvious, is
> important in determining whether the invitee is to
> be charged with contributory negligence, or
> assumption of risk." Id. "It is not, however,
> conclusive in determining the duty of the
> [landowner], or whether he has acted reasonably
> under the circumstances." Id.

Id. Viewing the evidence in the light most favorable to the

plaintiff, the Robbins court concluded that a genuine issue of

material fact existed as to whether the defendant should have

anticipated the harm to the plaintiff. Id. This Court agrees

with the reasoning and analysis in Robbins.

Courts generally have held that, under varying

circumstances, a swimming pool constitutes an open and obvious

danger. See, e.g., Page v. Choice Hotels Int'l, Inc., No.

2:04-CV-13, 2005 WL 1106893, at *3 (W.D. Mich. Apr. 18, 2005)

("In this case, the danger of swimming along in an unsupervised

pool is open and obvious as a matter of law, to a reasonably

prudent person."); Estate of Valesquez v. Cunningham, 738 N.E.2d

876, 880-81 (Ohio Ct. App. 2000) (recognizing a swimming pool to

be an open and obvious danger); Torf v. Commonwealth Edison, 644

N.E.2d 467 (Ill. Ct. App. 1994) (same); accord Wagatsuma v.

Patch, 10 Haw. App. 547, 570, 879 P.2d 572, 585 (1994) (holding

in products liability case that "[s]ince it is obvious to all

that swimming pools are dangerous to young children, we take

judicial notice of that fact.").

That a swimming pool may be an open and obvious danger

in some circumstances does not relieve Defendant of all liability here. As recognized by the court in <u>Robbins</u>, comment f. to § 343A provides that the landowner's duty of care is not necessarily nullified by an open and obvious danger:

> There are, however, cases in which the possessor
> of land can and should anticipate that the
> dangerous condition will cause physical harm to
> the invitee notwithstanding its known or obvious
> danger. In such cases the possessor is not
> relieved of the duty of reasonable care which he
> owes to the invitee for his protection. <u>This duty</u>
> <u>may require him to warn the invitee, or to take</u>
> <u>other reasonable steps to protect him, against the</u>
> <u>known or obvious condition or activity, if the</u>
> <u>possessor has reason to expect that the invitee</u>
> <u>will nevertheless suffer physical harm.</u>
>
> Such reason to expect harm to the visitor from
> known or obvious dangers may arise, for example,
> where the possessor has reason to expect that the
> invitee's attention may be distracted, so that he
> will not discover what is obvious, or will forget
> what he has discovered, or fail to protect himself
> against it. Such reason may also arise where the
> possessor has reason to expect that the invitee
> will proceed to encounter the known or obvious
> danger because to a reasonable man in his position
> the advantages of doing so would outweigh the
> apparent risk. In such cases the fact that the
> danger is known, or is obvious, is important in
> determining whether the invitee is to be charged
> with contributory negligence, or assumption of
> risk. It is not, however, conclusive in
> determining the duty of the possessor, or whether
> he has acted reasonably under the circumstances.

Restatement (Second) of Torts § 343A cmt. f (emphasis added) (internal citation omitted).

Given the foregoing, it is possible that, to a reasonable person, the advantages of swimming unsupervised in the

Barefoot Bar pool would outweigh any apparent risk. Thus, the Court cannot conclude, as a matter of law, that Defendant should not have had reason to expect its guests to encounter the danger of drowning without a lifeguard present, even if the danger was known and obvious. Thus, whether the Barefoot Bar swimming pool, without lifeguards posted, constitutes an "unreasonable risk," or whether Defendant was required to take reasonable steps to protect its swimmers against a known danger are questions of fact for the factfinder to determine.

Further, to the extent Defendant seeks a ruling as a matter of law that its general duty of care did not require it to post a lifeguard under the unique facts and circumstances of this case, the Court finds that this is an issue of fact for the jury.[8] As Hawai'i appellate courts have explained, "'[i]ssues of negligence are ordinarily not susceptible of summary adjudication' by the court." <u>Bidar v. Amfac, Inc.</u>, 66 Haw. 547, 553, 669 P.2d 154, 159 (1983) (quoting <u>Pickering v. State</u>, 57

---

[8] Defendant did not cite and the Court did not locate any authority imposing a common law duty upon a premises owner to provide lifeguards at a swimming pool. <u>See, e.g.</u>, <u>Page v. Choice Hotels Int'l, Inc.</u>, No. 2:04-CV-13, 2005 WL 1106893, at *3-4 (W.D. Mich. Apr. 18, 2005) (finding under Michigan law that hotel did not have a duty to protect decedent from the danger of swimming in an unsupervised pool, where the danger of swimming alone in an unsupervised pool is open and obvious, and locating no common law duty upon premises owner to supervise swimming pool). In the absence of clear authority requiring a hotel to provide lifeguards at its pools, this Court, sitting in diversity, will refrain from either imposing that particular duty or declaring that a hotel has no such duty here.

Haw. 405, 407, 557 P.2d 125, 127 (1976)).  "Whether the defendant
had a duty to take reasonable action to protect the plaintiff
from unreasonable risk of harm is, of course, a question for the
judge.  But what is reasonable and unreasonable and whether the
defendant's conduct was reasonable in the circumstances are for
the jury to decide."  <u>Knodle</u>, 69 Haw. at 387, 742 P.2d at 384.
Accordingly, Defendant's Motion is DENIED with respect to
liability.

## II.  <u>Punitive Damages</u>

Defendant also seeks summary judgment on Plaintiffs'
claims for punitive damages, and argues that, viewing the facts
of the case in the light most favorable to Plaintiffs, the
alleged negligence does not support a claim for punitive damages.
The Court agrees.

The purpose of punitive damages is to punish or deter,
and they require deliberate, outrageous conduct on the part of a
defendant.  "Punitive or exemplary damages are generally defined
as those damages assessed in addition to compensatory damages for
the purpose of punishing the defendant for aggravated or
outrageous misconduct and to deter the defendant and others from
similar conduct in the future."  <u>Masaki v. Gen. Motors Corp.</u>, 71
Haw. 1, 6, 780 P.2d 566, 570 (1989).  "In determining whether an
award of punitive damages is appropriate, the inquiry focuses
primarily upon the defendant's mental state, and to a lesser

degree, the nature of his conduct."  <u>Id.</u> at 7, 780 P.2d at 570.

Viewing the facts in the light most favorable to Plaintiffs, the evidence does not establish aggravated or outrageous conduct, or that Defendant acted with the requisite culpability to support punitive damages.  Plaintiffs have not alleged or come forward with evidence of willful, wanton, malicious or intentional conduct on behalf of Defendant toward Plaintiffs, as required to maintain a claim for punitive damages.

"'Punitive damages are not awarded for mere inadvertence, mistake, or errors of judgment.'"  <u>Ass'n of Apartment Owners v. Venture 15, Inc.</u>, 115 Hawai'i 232, 297, 167 P.3d 225, 290 (2007) (quoting <u>Masaki</u>, 71 Haw. at 7, 780 P.2d at 571) (emphasis omitted).  Rather, the Hawai'i Supreme Court has explained:

> [i]n order to recover punitive damages, "the
> plaintiff must prove by clear and convincing
> evidence that the defendant has acted
> wantonly or oppressively or with such malice
> as implies a spirit of mischief or criminal
> indifference to civil obligations, or where
> there has been some wilful misconduct or that
> entire want of care which would raise the
> presumption of a conscious indifference to
> consequences."

<u>Id.</u> (quoting <u>Masaki</u>, 71 Haw. at 16–17, 780 P.2d at 575) (some brackets omitted).  Plaintiffs have not done so here.

Under the facts presented, Plaintiffs' negligence claim cannot support an award of punitive damages. Plaintiffs have not met their burden in opposing summary judgment to come forward

36

with specific facts supporting their claim for punitive damages and to show that there is a genuine issue for trial. Accordingly, Defendant's Motion is GRANTED with respect to punitive damages.

## CONCLUSION

On the basis of the foregoing, Defendant Pleasant Travel Service, Inc.'s Motion for Summary Judgment, filed May 18, 2011, is HEREBY GRANTED IN PART as to punitive damages and DENIED IN PART in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 22, 2011.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

VICTORIA YI, ETC., ET AL. V. PLEASANT TRAVEL SERVICE, INC., ET AL; CIVIL NO. 10-00318 LEK-RLP; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT PLEASANT TRAVEL SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT