IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VICTORIA YI, Next Friend of SONG MEYONG HEE, an Incapacitated adult, HEO HYEOB, HEO EUNSUK, and HEO KEUN SEOK,<br><br>          Plaintiffs,<br><br>     vs.<br><br>PLEASANT TRAVEL SERVICE, INC., ROYAL LAHAINA RESORT, HAWAIIAN HOTELS AND RESORTS, JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10, ROE NON-PROFIT CORPORATIONS 1-10, ROE GOVERNMENTAL ENTITIES 1-10,<br><br>          Defendants. | CIVIL NO. 10-00318 LEK-RLP |

**ORDER (1) DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT, AND (2) DENYING DEFENDANT
PLEASANT TRAVEL SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are: (1) Plaintiffs Victoria Yi, Next Friend of Song Myeong Hee, an incapacitated adult, Heo Hyeob, Heo Eunsuk, and Heo Keun Seok's (collectively "Plaintiffs") Motion for Partial Summary Judgment ("Plaintiffs' Motion"), filed on April 19, 2012; and (2) Defendant Pleasant Travel Service, Inc., doing business as Royal Lahaina Resort and Hawaiian Hotels & Resorts' ("Defendant") Motion for Summary Judgment ("Defendant's Motion"), filed on July 11, 2012.  Defendant filed its memorandum in opposition to Plaintiffs' Motion on July 20,

2012, and a supplemental declaration on August 20, 2012. Plaintiffs filed their reply on August 16, 2012.  Plaintiffs' Motion came on for hearing on September 26, 2012.  Appearing on behalf of Defendant were Randall Chung, Esq., and Michael Scott Hult, Esq., and appearing on behalf of Plaintiffs was James Krueger, Esq.

Plaintiffs filed their memorandum in opposition to Defendant's Motion on October 5, 2012, and Defendant filed its reply on October 15, 2012.  Pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules"), the Court finds Defendant's Motion suitable for disposition without a hearing.

After careful consideration of the motions, supporting and opposing memoranda, and the arguments of counsel, the Court HEREBY DENIES both motions.

### BACKGROUND

This cases arises from the near drowning of Plaintiff Song Myeong Hee ("Song") at Defendant's hotel pool.  The Court previously granted in part and denied in part Defendant's motion for summary judgment in a September 22, 2011 Order ("9/22/11 Order"[1]).  The 9/22/11 Order set forth the following allegations from Plaintiffs' Complaint:

---

[1] The 9/22/11 Order is available at 2011 WL 4443625.

Plaintiffs allege that on August 8, 2009, Song, along with her husband, Heo Hyeob, daughter, Heo Eunsuk, and son, Heo Keun Seok, were guests at the Royal Lahaina Resort operated by Defendant, located in Kaanapali, Maui, Hawai'i. [Complaint at ¶¶ 2-5, 13.] All are residents and citizens of Seoul, Korea. [Id. at ¶ 2.] Plaintiffs allege that, on or about August 8, 2009, Song was in of the two swimming pools on the property where she "sank below the surface of water in the pool for a period of time after which she was brought to the surface having suffered a hypoxic event which caused her to suffer brain damage which rendered her, in the parlance, a 'vegetable.'" [Id. at ¶ 14.]

Plaintiffs allege that there was no lifeguard on duty at the pool at the time of the accident; there was a sign posted near the pool that said "WARNING NO LIFEGUARD ON DUTY". [Id. at ¶¶ 12, 17.] According to Plaintiffs, the "text of the aforesaid sign failed to adequately warn guests of defendants, and/or any of them, including plaintiffs, of the hazard, risk and foreseeable harm as could result from the failure of defendants, and/or any of them, to provide a lifeguard at the pool." [Id.] Plaintiffs claim that if Defendant had provided a lifeguard at the pool on August 8, 2009, Song likely would not have suffered brain damage. [Id. at ¶ 19.]

Plaintiffs allege that Defendant was negligent, and seek the following: (1) damages for Song's severe brain damage, limitation of activity, loss of enjoyment of life and reduction of life expectancy, and past and future medical treatment; (2) damages for loss of marital and parental support, love, consortium and friendship, and for serious mental distress on behalf of Song's husband, daughter, and son; and (3) punitive damages. [Id. at ¶¶ 21, 25, 27-29.]

2011 WL 4443625 at *1 (footnote omitted).

The Court previously denied Defendant's motion for summary judgment as to its liability for negligence. In the

current motions, the parties again seek summary judgment as to Defendant's liability for negligence.

## I.  **Plaintiffs' Motion**

Plaintiffs seek partial summary judgment "on the issues of the liability of the defendant hotel only and its causation of the damages" Plaintiffs allegedly suffered.  [Mem. in Supp. of Plaintiffs' Motion at 1.]

Plaintiffs argue that to "suffer irreversible brain damage such as Mrs. Song suffered, she had to have been underwater for a period of five to ten minutes."  [Id. at 8; Plaintiffs' Separate and Concise Statement of Facts ("Pltfs.' SCOF"), 7/11/11 Report of Jerome Modell, M.D. ("Modell Report"[2]), at 2; Declaration of Shawn DeRosa ("DeRosa Decl."[3]), at 11-12.] They opine that, "[a] lifeguard at the pool, having been adequately trained, and exercising basic due diligence, would have prevented Song from suffering permanent brain damage, having been underwater for a period of some five to ten minutes."  [Mem. in Supp. of Plaintiffs' Motion at 8 (citing DeRosa Decl. at 11-12).]  According to Plaintiffs, a "passive drowner" like Song is one who does not struggle, and a lifeguard would have known how

---

[2] The Model Report is attached as Exhibit B to Plaintiffs' memorandum in opposition to Defendant's previous motion for summary judgment.  [Dkt. no. 64-9.]

[3] The DeRosa Declaration is attached as Exhibit D to Plaintiffs' memorandum in opposition to Defendant's previous motion for summary judgment.  [Dkt. no. 64-11.]

to respond to and treat such a drowning.  [Id. at 9.]

Plaintiffs argue that Defendant owed its hotel guests a duty to not expose them to an unreasonable risk of harm.  "The unwarned about, unreasonable risk of harm, to which defendant exposed its pool-using guests, including Song, was the unobservable possibility of not being rescued should the need for such arise, or later resuscitate."  [Id. at 11.]  They acknowledge that "the possibility of drowning in a pool is a foreseeable occurrence."  [Id. at 12.]  In lieu of placing a lifeguard at the pool, Defendant posted a sign stating "No Lifeguard on Duty," which Plaintiffs argue "demonstrated defendant's knowledge that its guest could be foreseeably exposed to serious harm at its pool, but it did nothing to preclude that harm from happening."  [Id. (emphasis Plaintiffs').]

Plaintiffs cite the Restatement (Second) of Torts § 314, urging that a hotel has a special relationship with its guests and a duty to take reasonable action to protect them against unreasonable risk of harm.  [Id. at 13.]  Plaintiffs also repeat their earlier arguments relating to landowners' duties with respect to guests swimming at public pools and resort-fronting beaches.  [Id. at 15-16 (citing Carreira v. Territory, 40 Haw. 513 (1954); Tarshis v. Lahaina Investment Corp., 480 F.2d 1019 (9th Cir. 1973)).]

Plaintiffs again make the argument that the Defendant hotel's location on the Kaanapali coast is comparable to that of hotels on the Las Vegas "strip," and that such Las Vegas hotels all have guarded pools. [Id. at 14.] They also submit evidence of guarded resort pools on Oahu. [Id.]

They further argue that policy considerations justify the imposition of a duty to post lifeguards at hotel pools. Plaintiffs assert that the public policy behind providing lifeguards at the municipal Lahaina Aquatic Center near the Defendant hotel applies with equal force to the hotel. Plaintiffs state that, "[w]hether the pool is located at a large resort hotel, or a municipal community center, is an irrelevance. The possibility of drowning affects all pool users, hotel or municipal." [Id. at 20.] They further compare this policy to the "policy supporting the initial enactment of strict product liability law". [Id. at 19.] Plaintiffs ask, "who better than the hotel to bear the risk or responsibility for a guest's injury caused by a known defect [dangerous condition] on the hotel's premises, which hazard the hotel had the opportunity to have eliminated?" [Id. (alteration Plaintiffs').]

With respect to causation, Plaintiffs argue that a competent lifeguard, exercising due diligence, would have seen Song and brought her to the surface before she would have suffered permanent brain damage. [Id. at 22.] They cite Haft v.

6

Lone Palm Hotel, 478 P.2d 465 (Cal. 1970), arguing that "in the absence of proof that defendants' not providing a lifeguard was not a proximate cause of the deaths claimed about, defendants' causation would be established as a matter of law." [Id.] They contend that it is appropriate to shift the causation burden to Defendant to absolve itself. [Id. at 23-24.]

### A.   Defendant's Opposition

"Defendant agrees that there are no genuine issues of material fact regarding the issue of duty." [Mem. in Opp. to Plaintiffs' Motion at 1.] It argues, however, that Plaintiffs are not entitled to summary judgment. Rather, Defendant argues that it is entitled to summary judgment on its own motion, and pursuant to Local Rule 56.1(i). It argues that there is no basis for the imposition of any duty of the part of Defendant, and therefore, summary judgment should be entered in its favor. [Id. at 2-4.]

Defendant first notes that Plaintiffs define the unreasonable risk of harm here as "the unobservable possibility of not being rescued should the need for such arise," but that Plaintiffs do not cite any legal authority providing that this is an unreasonable risk of harm. [Id. at 6 (citing Mem. in Supp. of Plaintiffs' Motion at 12).] It agrees that "a hotel has a duty to its guests to take reasonable action to protect them from unreasonable risk of harm." [Id. at 7.] It argues that there is

no evidence, however, that a "reasonable person would have believed that there was a lifeguard present at the time of the subject incident." [Id. at 6.]

Defendant argues that Plaintiffs' introduction of evidence regarding lifeguards at Las Vegas and Oahu hotel pools is not relevant to its duty in this specific instance.  It does note that, "if one were to look to other hotels in Hawaii with respect to the provision of lifeguards, there is only one private hotel that may post lifeguards – Aulani." [Id. at 8.] Defendant's state that their expert in aquatic design, engineering, and safety, William Rowley, Ph.D., inspected twenty-eight hotel properties on Maui and sixteen hotels on Oahu, and that none of them have lifeguards posted.  As to the Las Vegas hotels, those were required to have lifeguards under state law, whereas Hawaiʻi has no similar requirement.  [Id. at 8; 3/21/12 Suppl. Report of William Rowley ("Rowley Report"[4]), at 5, 9-11.]

Defendant also disputes Plaintiffs' argument that there should be no distinction between municipal pools and hotel pools with respect to the posting of lifeguards.  It argues that a more appropriate basis for comparison is to look at comparable hotels within the state.  It asserts that, while there are regulations applicable to the pool at issue in this case, none of them

---

[4] The Rowley Report is attached as Exhibit A to the Declaration of Michael S. Hult ("Hult Decl."). [Dkt. no. 125-2.]

require the posting of a lifeguard.  [Id. at 9 (citing Rowley
Report at 81; Haw. Admin. R. Title 11, Chapter 10 "Public
Swimming Pools").]

        With respect to Plaintiffs' reliance on Carreira,
Defendant asserts that the case is not relevant on its facts
because, in that incident, the Territory provided a lifeguard,
there were 500 swimmers present in the Natatorium's salt-water
ocean swimming pool, and the lifeguard on duty was eating lunch
at the time of the drowning.  In Carreira, "the Territory, by
posting a lifeguard, assumed a duty that this Defendant did not."
[Id. at 9.]

        Defendant attempts to distinguish the Tarshis case
relied upon by Plaintiffs, arguing that the hotel's duty to warn
of dangerous ocean conditions turned on the "finding that the
surging surf was 'unapparent.'"  [Id. at 10 (quoting Tarshis v.
Lahaina Investment Corp., 480 F.2d 1019 (9th Cir. 1973)).]  It
argues that the reasoning of Tarshis, which was "protection to
guests regarding latent conditions, does not apply to this
case[,]" where the potential dangers presented by the ocean are
not relevant to the danger of drowning in a small artificial
swimming pool.  [Id.]

        With respect to Plaintiffs' invocation of policy
considerations, Defendant contends that the state legislature has
already considered the issue, therefore, such considerations are

not relevant to this incident.  It emphasizes that the Department of Health's administrative rules relating to public swimming pools do not require public pools to have lifeguards.  In contrast, it notes that a certified lifeguard is required for certain child care centers and school child care facilities. [Id. at 11 (citing Haw. Admin. R. §§ 17-892.1.39, 17-895-40, and 11-896-36).]

Defendant next states that, because it is under no duty to provide a lifeguard, it is not necessary for the Court to reach Plaintiffs' arguments regarding causation.  It nevertheless argues that Plaintiffs are not entitled to summary judgment on this basis.  Defendant states that Mr. DeRosa, Plaintiffs' expert, is not qualified to render a medical opinion regarding what medical condition would have resulted for Song if a lifeguard had been present; that is, Plaintiffs' argument that a properly trained lifeguard would have spotted Song in time to prevent brain damage is unsupported and speculative.  [Id. at 14-15.]

Defendant points to the conclusions of its expert, Dr. Rowley, that its swimming pool was operated in compliance with all applicable state regulations and Maui County law. Dr. Rowley determined that the signage at the pool exceeded applicable requirements, and is used throughout Maui and Oahu. The subject swimming pool has two stepped entries, and the "No

Lifeguard On Duty" sign is visible from both, and could be read
from anywhere in the swimming pool area.  [Id. at 21 (citing
Rowley Report at 14, 20-28).]

Defendant emphasizes that it was under no duty to post
a lifeguard; there is no statutory or common law basis in this
jurisdiction requiring a hotel to post a lifeguard at its
swimming pool; and there is no authority holding that the
presence of a swimming pool on the premises presents an
unreasonable risk of harm to guests.  According to Defendant,
Plaintiffs are asking the Court to impose a new legal duty to
provide lifeguards at hotel swimming pools.  [Id. at 20.]

**B.   Plaintiffs' Reply**

In their reply, Plaintiffs assert that "Defendant owed
Song a legal duty that it violated by exposing her to an
unreasonable risk of harm, which risk could easily have been
avoided by providing a lifeguard at the pool, or closing it."
[Plaintiffs' Reply at 3.]  They stress that the "magnitude of the
foreseeable harm so greatly illustrates why the failure to
provide rescue opportunity is so unreasonable."  [Id. at 4
(emphasis Plaintiffs').]

Plaintiffs fault Defendant for not providing "an
affidavit of appropriate hotel leadership and management about
why it never provided a lifeguard, what considerations it gave to
consciously not doing so, whether it ever sought a legal opinion

that it didn't need to do so, or any other justifying information respecting the no lifeguard situation[.]" [Id. at 5.]

With respect to state law requiring hotels in Nevada to post lifeguards, Plaintiffs state that "the fact that the Nevada hotels [must] have guards only demonstrates a feasible, proper and sound, protective water safety policy." [Id. at 11 (emphasis Plaintiffs').] They argue that aquatic safety "does not necessarily devolve from statutory regulation." [Id. at 12.] Plaintiffs insist that, although there is no Hawai'i law requiring lifeguards, that does not determine the Court's formulation of the duty a hotel owes to its guests. [Id.]

## II.  **Defendant's Motion**

Defendant moves for summary judgment on the grounds that Plaintiffs cannot meet their burden of proof, and that it did not owe Song any duty with respect to the subject incident. [Mem. in Supp. of Defendant's Motion at 1-2.] Defendant generally repeats the same arguments made in opposition to Plaintiffs' Motion. Defendant insists that whether it owed a duty to provide a lifeguard at its swimming pool is a question of law for the Court to decide, not the jury. [Id. at 7.]

### A.  **Plaintiffs' Memorandum in Opposition**

In their memorandum in opposition, Plaintiffs assert that Defendant's Motion is repetitive of its previous motion, which the Court denied in the 9/22/11 Order, and is subject to

12

the "law of the case" doctrine.  [Mem. in Opp. to Defendant's Motion at 2-4.]

With respect to Defendant's argument that it owed no duty under the circumstances presented, Plaintiffs assert that: (1) Defendant had a duty to avoid subjecting its guests to an unreasonable risk of harm; (2) drowning is an unreasonable risk of harm; (3) providing a lifeguard would have avoided that unreasonable risk of harm; and (4) Defendant has not provided any information indicating why it never provided a lifeguard.  [Id. at 12.]

### B.  Defendant's Reply

In its reply, Defendant contends that the bases for its current motion are distinct from its earlier motion, in that the current motion relies on Plaintiffs' failure to meet their burden with respect to the element of duty.  [Defendant's Reply at 1-4.] The parties continue to dispute the admissibility of the declarations and reports of their experts, Mr. DeRosa and Dr. Rowley.[5]  [Id. at 4-6.]

---

[5] Plaintiffs argue that the Rowley Report constitutes inadmissible hearsay because it is not sworn to, as an affidavit or declaration.  They object to its admission pursuant to Fed. R. Civ. P. 56(c)(2).  In response to Plaintiffs' objection, Defendant filed a motion to supplement its memorandum in opposition with an additional Declaration of William N. Rowley, Ph.D., P.E. ("Rowley Declaration"), attesting to the matters set forth in his reports submitted by Defendant in this matter. [Dkt. nos. 133-1 and 133-2.]   The Court granted the motion to supplement on August 30, 2012.  [Dkt. no. 133-3.]  The Court has
(continued...)

## DISCUSSION

I.   **9/22/11 Order**

This Court previously denied Defendant's motion for summary judgment as to its liability for negligence, in part, as follows:

> It is well-established that Defendant, as landowner, owes Plaintiffs a general duty of reasonable care.  Under Hawai'i law, a landowner has a duty to use reasonable care for the safety of all persons reasonably anticipated to be on the premises.  Kahan v. United States, 73 F. Supp. 2d 1172, 1178 (D. Hawai'i 1999) (citing Gibo v. City & Cnty. of Honolulu, 51 Haw. 299, 301, 459 P.2d 198 (1969)).  Further, Hawai'i courts recognize that a hotel has a "special relationship" with its guests, adopting § 314A of the Restatement (Second) of Torts.  See, e.g., Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 386, 742 P.2d 377, 384 (1987) ("When the relation is a special one of innkeeper and guest, the former is under a duty to take reasonable action to protect the latter against unreasonable risk of physical harm." (citing Restatement (Second) of Torts § 314A (1965))).
>
>     . . . .
>
> Hawai'i courts have looked to the Restatement (Second) of Torts § 343A with regard to the duty of care landowners owe to invitees with respect to known and obvious dangers.  See, e.g., Friedrich v. Dep't of Transp., 60 Haw. 32, 36-37, 586 P.2d 1037, 1040 (1978).  It states, in pertinent part, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor

_____

[5](...continued)
reviewed and will consider the matters set forth in both the Rowley Report and the DeRosa Declaration for purposes of ruling on the instant motions.

should anticipate the harm despite such knowledge
or obviousness."  Restatement (Second) of Torts §
343A(1).

          . . . .

     Courts generally have held that, under
varying circumstances, a swimming pool constitutes
an open and obvious danger.  <u>See, e.g.</u>, <u>Page v.
Choice Hotels Int'l, Inc.</u>, No. 2:04-CV-13, 2005 WL
1106893, at *3 (W.D. Mich. Apr. 18, 2005) ("In
this case, the danger of swimming along in an
unsupervised pool is open and obvious as a matter
of law, to a reasonably prudent person."); <u>Estate
of Valesquez v. Cunningham</u>, 738 N.E.2d 876, 880-81
(Ohio Ct. App. 2000) (recognizing a swimming pool
to be an open and obvious danger); <u>Torf v.
Commonwealth Edison</u>, 644 N.E.2d 467 (Ill. Ct. App.
1994) (same); <u>accord</u> <u>Wagatsuma v. Patch</u>, 10 Haw.
App. 547, 570, 879 P.2d 572, 585 (1994) (holding
in products liability case that "[s]ince it is
obvious to all that swimming pools are dangerous
to young children, we take judicial notice of that
fact.").

     That a swimming pool may be an open and
obvious danger in some circumstances does not
relieve Defendant of all liability here.  As
recognized . . . , comment f. to § 343A provides
that the landowner's duty of care is not
necessarily nullified by an open and obvious
danger:

          There are, however, cases in which the
          possessor of land can and should
          anticipate that the dangerous condition
          will cause physical harm to the invitee
          notwithstanding its known or obvious
          danger.  In such cases the possessor is
          not relieved of the duty of reasonable
          care which he owes to the invitee for
          his protection.  <u>This duty may require
          him to warn the invitee, or to take
          other reasonable steps to protect him,
          against the known or obvious condition
          or activity, if the possessor has reason
          to expect that the invitee will
          nevertheless suffer physical harm.</u>

> Such reason to expect harm to the
> visitor from known or obvious dangers
> may arise, for example, where the
> possessor has reason to expect that the
> invitee's attention may be distracted,
> so that he will not discover what is
> obvious, or will forget what he has
> discovered, or fail to protect himself
> against it.  Such reason may also arise
> where the possessor has reason to expect
> that the invitee will proceed to
> encounter the known or obvious danger
> because to a reasonable man in his
> position the advantages of doing so
> would outweigh the apparent risk.  In
> such cases the fact that the danger is
> known, or is obvious, is important in
> determining whether the invitee is to be
> charged with contributory negligence, or
> assumption of risk.  It is not, however,
> conclusive in determining the duty of
> the possessor, or whether he has acted
> reasonably under the circumstances.

Restatement (Second) of Torts § 343A cmt. f
(emphasis added) (internal citation omitted).

Given the foregoing, it is possible that, to
a reasonable person, the advantages of swimming
unsupervised in the Barefoot Bar pool would
outweigh any apparent risk.  Thus, the Court
cannot conclude, as a matter of law, that
Defendant should not have had reason to expect its
guests to encounter the danger of drowning without
a lifeguard present, even if the danger was known
and obvious.  Thus, whether the Barefoot Bar
swimming pool, without lifeguards posted,
constitutes an "unreasonable risk," or whether
Defendant was required to take reasonable steps to
protect its swimmers against a known danger are
questions of fact for the factfinder to determine.

Further, to the extent Defendant seeks a
ruling as a matter of law that its general duty of
care did not require it to post a lifeguard under
the unique facts and circumstances of this case,
the Court finds that this is an issue of fact for

the jury.  As Hawai'i appellate courts have
explained, "'[i]ssues of negligence are ordinarily
not susceptible of summary adjudication' by the
court."  <u>Bidar v. Amfac, Inc.</u>, 66 Haw. 547, 553,
669 P.2d 154, 159 (1983) (quoting <u>Pickering v.
State</u>, 57 Haw. 405, 407, 557 P.2d 125, 127
(1976)).  "Whether the defendant had a duty to
take reasonable action to protect the plaintiff
from unreasonable risk of harm is, of course, a
question for the judge.  But what is reasonable
and unreasonable and whether the defendant's
conduct was reasonable in the circumstances are
for the jury to decide."  <u>Knodle</u>, 69 Haw. at 387,
742 P.2d at 384.  Accordingly, Defendant's Motion
is DENIED with respect to liability.

2011 WL 4443625 at *11-15 (footnotes omitted).  The Court is

again guided by these general principles of negligence law in

Hawai'i.

**II.  <u>Duty of Hotel to Guest</u>**

The Court's previous discussion in the 9/22/2011 Order

regarding a hotel's duty toward its guests applies with equal

force to the instant motions.  The Court again re-asserts its

previous holding that whether Defendant had an affirmative

obligation to post a lifeguard at the Barefoot Bar Pool, and

whether the failure to do so constitutes an unreasonable risk of

harm, remain questions of fact on the current record.

To the extent that Plaintiffs insist that a lifeguard

was required as a matter of law, the Court finds that Plaintiffs

are not entitled to summary judgment.  As previously explained,

there is no statute, regulation, or case law mandating lifeguards

at all hotel pools under Hawai'i law.  The Court declines to

create such a duty as a matter of law on the current record.

Moreover, in jurisdictions where lifeguards are not mandated by

statute, it appears that courts do not impose an affirmative duty

on innkeepers to provide lifeguards for their guests.  The Court

notes, however, that none of the cases discussed below involved a

hotel pool like the instant case.

> For example, under Florida law:

>> An innkeeper in Florida has no duty to post a lifeguard on a public beach.  In fact, this court has held that a hotel has no duty even to post a lifeguard at its own swimming pool.  Frost v. Newport Motel, Inc., 516 So.2d 16 (Fla. 3d DCA 1987), rev. denied, 525 So.2d 878 (Fla. 1988); see also Hemispheres Condominium Ass'n v. Corbin, 357 So.2d 1074 (Fla. 3d DCA) (condominium association under no duty to its members to provide a professional lifeguard at the association's pool), cert. denied, 364 So.2d 883 (Fla. 1978).  The Restatement (Second) of Torts § 314A (1965) recognizes that an innkeeper has a special relationship with his guests which gives rise to a duty to protect them against unreasonable risk of physical harm.  Florida courts have similarly held.  See, e.g., Orlando Executive Park, Inc. v. Robbins, 433 So.2d 491 (Fla. 1983) (innkeeper owes the duty of reasonable care for the safety of his guests); Fennema v. Howard Johnson Co., 559 So.2d 1231 (Fla. 3d DCA 1990) (same).

Adika v. Beekman Towers, Inc., 633 So.2d 1170, 1170-71 (Fla.

Dist. Ct. App. 1994).

> In a North Carolina case that involved a private

homeowners' association pool, the district court held that the

"absence of a specific safety precaution cannot amount to

negligence in a pool drowning case under North Carolina law where

no regulation required that precaution." <u>Lampkin v. Covington at Providence Homeowners Ass'n, Inc.</u>, No. 3:10-cv-271-RJC-DCK, 2011 WL 5509034, at *5 (W.D.N.C. Nov. 10, 2011). <u>Lampkin</u> notes that North Carolina law has specific safety regulations for public swimming pools, but they do not require lifeguards. <u>Id.</u> at *3. It held that the defendant homeowners' association and property management company's "failure to provide lifeguards at their pool cannot amount to negligence where [the North Carolina Department of Environment and Natural Resources'] safety regulations did not require lifeguards and [defendants] posted warnings and provided other safety equipment, as required by the regulations." <u>Id.</u> at *5. <u>Lampkin</u> concluded that, under North Carolina state law, the defendants had no duty "to provide a lifeguard in the first place." <u>Id.</u>

In an older Michigan case, which appeared to address premises liability rather than negligence, the court "indicated that whether the owners of a trailer park had a duty to provide a lifeguard or lifesaving equipment at a small lake on their property should be a question for the jury, and it discussed the concept of negligence." <u>Wheeler v. Cent. Mich. Inns, Inc.</u>, 807 N.W.2d 909, 913 (Mich. Ct. App. 2011) (discussing <u>Kreiner v. Yezdbick</u>, 22 Mich. App. 581, 587, 177 N.W.2d 629 (1970)).

The Court cannot say that Defendant was per se negligent for failing to provide a lifeguard at its pool as a

matter of law.  Nor can it say that Plaintiffs have not raised triable questions of negligence entitling Defendant to summary judgment.  The Court agrees with the decisions discussed above indicating that, whether such an obligation existed under the circumstances presented, and whether it was breached are questions for the jury.  To the extent the parties argue that the Court must decide specific issues of the scope Defendant's duty to prevent unreasonable risks of harm on summary judgment, the Court again finds that whether the parties' conduct was reasonable under the circumstances is for the jury to decide. See Knodle, 69 Haw. at 387, 742 P.2d at 384.

The Court HEREBY DENIES both Plaintiffs' Motion and Defendant's Motion and finds that neither party is entitled to summary judgment on the current record.  To the extent the Court has not specifically addressed the many procedural arguments made by the parties in their briefing, the motions are DENIED in all other respects.

## CONCLUSION

On the basis of the foregoing, Plaintiff's Motion for Partial Summary Judgment, filed April 19, 2012, and Defendant's Motion for Summary Judgment, filed on July 11, 2012, are HEREBY DENIED.

IT IS SO ORDERED.

20

DATED AT HONOLULU, HAWAII, November 28, 2012.



 /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

<u>VICTORIA YI, ET AL. V. PLEASANT TRAVEL SERVICE, INC., ET AL.</u>;
CIVIL NO. 10-00318 LEK-RLP; ORDER (1) DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT, AND (2) DENYING DEFENDANT
PLEASANT TRAVEL SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT